George M. Haley, #1302
E. Blaine Rawson, #1986
HOLME ROBERTS & OWEN LLP
299 South Main Street, Suite 1800
Salt Lake City, UT 84111
(801) 521-5800
E-mail: *george.haley@hro.com*
E-mail: *blaine.rawson@hro.com*

Colin G. Harris (*Pro Hac Vice*)
Holme Roberts & Owen LLP
One Boulder Plaza
1801 13th Street, Suite 300
Boulder, CO 80302
Telephone:   (303) 444-5955
Facsimile:    (303) 866-0200
E-mail: *colin.harris@hro.com*

John D. McCarthy (*Pro Hac Vice pending)*
Holme Roberts & Owen LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203-4541
Telephone:   (303) 861-7000
Facsimile:    (303) 866-0200
E-mail: *jay.mccarthy@hro.com*

*Attorneys for Defendant Questar Gas
Management Company*

IN THE UNITED STATES JUDICIAL DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>v.<br><br>QUESTAR GAS MANAGEMENT COMPANY,<br><br><br><br>                                    Defendant. | **MEMORANDUM IN SUPPORT OF MOTION UNDER RULE 26(b)(5)(B) FOR DETERMINATION THAT THE PLAINTIFF HAS WAIVED PRIVILEGE OVER INADVERTENTLY PRODUCED DOCUMENTS AND MOTION UNDER RULE 37(a)(3)(B) TO COMPEL DISCOVERY RESPONSES REGARDING INADVERTENTLY PRODUCED DOCUMENTS**<br>             Case No. 2:08CV-00167-DAK<br>             Judge Dale A. Kimball |

#1437527 v2 den

**INTRODUCTION**

Questar Gas Management Company ("QGM") requests the Court to determine that the United States has waived privilege over seven specific documents that have been inadvertently produced, as well as all other documents inadvertently produced that have not already been returned or destroyed or that may be inadvertently produced in the future.

In this litigation, the United States has produced approximately the same number of documents as QGM. The United States has produced about 20,200 documents, and QGM has produced about 19,550 documents. QGM has made about 237 claims of privilege, and the United States has made about 6,200 claims of privilege. QGM has requested return of one inadvertently produced document. The United States, despite having notice early in the litigation that it had problems with producing privileged documents, and having requested return of inadvertently produced documents on many occasions, continues to demand that QGM return documents even after QGM has relied on them.

**BACKGROUND**

Since April 2008 when QGM notified the United States that it had obtained three emails that appeared to be privileged and offered to return them, the United States has been on notice that it was producing privileged documents. *See* Exhibit A (letters dated April 2, 2008 and April 4, 2008 regarding three emails; September 24, 2008 letter regarding two documents; November 19, 2008 letter regarding "numerous privileged documents"; April 3, 2009 letter regarding an EPA case screening report; July 1, 2009 letter regarding one document; and July 10, 2009 letter regarding an exhibit used in a deposition). QGM has returned or destroyed the inadvertently produced documents identified in Exhibit A. As the litigation has progressed,

#1437527 v2 den

however, it became increasingly difficult for QGM to guess at what the United States believed was privileged.  The United States has not claimed privilege over documents that might appear privileged, and claimed privilege over documents that might not appear privileged.

The United States first had specific notice that QGM intended to use some of the documents at issue in this motion on September 10, 2009.  Colin Harris, on behalf of QGM, wrote a letter to Mark Elmer, a Department of Justice lawyer representing the United States, stating that QGM should be able to pursue testimony from a Rule 30(b)(6) deponent regarding potential to emit rulemaking because so many documents had been produced regarding the status of that rulemaking.  *See* Exhibit B.  The letter identified those documents by bates numbers, including EPA_00175191-192 ("Contested Document 1") and EPA_00175695-702 ("Contested Document 2") (attached to Motion to File Documents Under Seal ("Motion Re Seal") ( filed contemporaneously with this Motion).

On September 22, 2009, QGM filed its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on Defendants' Fourth Affirmative Defense.  ("Opposition Memorandum") (Doc. 74), which attached EPA_00068233-40, ("Contested Document 3/Hutchinson Exhibit 11") and EPA_00175756-8, ("Contested Document 4/Hutchinson Exhibit 18") (attached to Motion Re Seal).  QGM relied on these documents in its Statement of Additional Facts (Opposition Motion at 20, 24) in order to defend itself against the United States' premature Motion for Summary Judgment on Defendant's Fourth Affirmative Defense, dated August 6, 2009 (Doc. 54).

On September 22, 2009, QGM also sent the United States a Second Notice of 30(b)(6) Deposition (Exhibit C) regarding EPA policy for determining under what circumstances and by

what mechanisms federally enforceable or otherwise legally effective synthetic minor limits may be obtained by sources in Indian Country, and specifically referenced situations identified in documents in a Schedule A, including:  Item M (Contested Document 3/Hutchinson Exhibit 11); Item N (Contested Document 4/Hutchinson Exhibit 18); Item Q (EPA_00152229-233, 2004 EPA emails regarding creating federally enforceable limits on tribal lands) (Contested Document 5); and Item U (EPA-00175751-52, Contested Document 6/Hutchinson Exhibit 17) (attached to Motion Re Seal).

Two days later, on September 24, 2009, Mr. Harris took the deposition of Lynn Hutchinson, who was designated as a United States Rule 30(b)(6) deponent to testify generally about EPA's interpretation of and response to the decisions in *Chemical Manufacturer's Ass'n v. EPA*, No. 89-1514 (D.C. Cir. Sept. 15, 1995), *National Mining Assoc. v. EPA*, 59 F.3d 1351 (D.C. Cir. 1995), and *Clean Air Implementation Project v. EPA*, No. 96-1224, 1996 U.S. App. LEXIS 18402 (D.C. Cir. June 28, 1996), as they relate to the definition of "potential to emit" and the requirement for "federal enforceability."  Mr. Harris tried to use Contested Document 3/Hutchinson Exhibit 11, Contested Document 6/Hutchinson Exhibit 17, and Contested Document 4/Hutchinson Exhibit 18.  During the deposition, Mr. Elmer who defended Ms. Hutchinson, objected to the use of these three exhibits, asserting that they were privileged, and directed the witness not to answer questions about the privileged portions of the documents.  Mr. Elmer took possession of the exhibits and advised Mr. Harris that he would provide redacted versions for inclusion with the deposition transcript.  Mr. Harris reserved all rights to assert waiver of privilege over the three exhibits.  *See* Exhibit D (Hutchinson Depo. 131:4-141:9 (Exhibit 11); 173:1-177:20 (Exhibit 17); and 177:22-185:2 (Exhibit 18).

More than a week after the deposition and nine days after QGM filed its Opposition Memorandum, Mr. Elmer wrote a letter, dated October 1, 2009 (Exhibit E), expressing "surprise" that QGM had not notified the United States before attaching Contested Document 3/Hutchinson Exhibit 11 and Contested Document 4/Hutchinson Exhibit 18 to its Opposition Memorandum or mentioning this fact during the deposition.  Mr. Elmer provided three redacted Hutchinson exhibits (Exhibit F).  He requested that QGM substitute redacted versions of these exhibits with the unredacted versions filed with the Opposition Memorandum and, to the extent the Opposition Memorandum makes reference to privileged attorney-client communications, substitute the original Opposition Memorandum with a revised one that eliminates the references.

On October 14, 2009, QGM responded to Mr. Elmer's October 1, 2009 letter (Exhibit G). QGM stated that the United States had waived privilege over the three Hutchinson exhibits, as well as all other inadvertently produced documents that had not already been returned or destroyed because of the United States' inconsistent, lax, and haphazard approach to attorney-client and work product privileges.  QGM's letter also stated that QGM had used many other exhibits during depositions that might appear privileged without any objection, and therefore found it impossible to understand what the United States believes is privileged.  The letter also referenced QGM's September 10, 2009 letter and the Second Notice of 30(b)(6) Deposition that specifically identified certain documents that might appear privileged.

On October 26, 2009, the United States responded (Exhibit H), continuing to claim privilege over the three Hutchinson exhibits, and for the first time asserting that Contested Documents 1, 2, and 5 were inadvertently produced.  Mr. Elmer claimed that five documents at

5

issue were covered by existing privilege claims, with only Contested Document 1 not covered by an existing claim.  Mr. Elmer's letter completely revised the description of the claims in privilege logs previously provided to QGM, indicating how confusing the United States' privilege claims are.  *See* Exhibit I (showing changes to the claim descriptions).  Mr. Elmer's letter also described its privilege review.  Moreover, the letter stated that the United States "does not acquiesce to QGM's claim that it has waived any privilege with regard to any inadvertently produced documents that may be discovered in the future."

On November 4, 2009, Colin Harris took the deposition of EPA employee Cindy Beeler, and once again, tried to use as an exhibit a document (EPA_00026944-947, "Contested Document 7") (attached to Motion Re Seal) which Jerry Ellington, the Department of Justice lawyer defending her, objected to as privileged.  *See* Exhibit J (Copy of Beeler Depo. 259:2-261:25).  Mr. Ellington instructed the witness not to answer, and sent a letter, dated November 6, 2009, asking that QGM "immediately return or destroy all copies of the document inadvertently produced."  (Exhibit K.)

QGM's counsel has sequestered the seven contested documents consistent with Federal Rule of Civil Procedure 26(b)(5)(B), until the claims of privilege are resolved.

**ARGUMENT**

Generally, the attorney-client privilege is lost if the substance of the confidential communication is disclosed to a third party, even if inadvertently.  *Jobin v. Bank of Boulder*, 161 B.R. 689, 693 (D. Colo. 1993) (citing *United States v. Ryans*, 903 F.2d 731, 741 n. 13 (10th Cir. 1990)).  The Tenth Circuit has stated that, "the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived.  The courts

6

will grant no greater protection to those who assert the privilege than their own precautions warrant." *In re Qwest Communs. Int'l*, 450 F.3d 1179, 1185 (10th Cir. 2006) (citing *Ryans*).

The United States has waived the privilege over the seven contested documents, as well as all other documents inadvertently produced that have not already been returned or destroyed or that are inadvertently produced in the future. The Plaintiff's inadvertent disclosure is a waiver because it does not satisfy the requirement of Federal Rule of Evidence 502(b) regarding when waiver can be avoided. Rule 502(b) states:

> Inadvertent disclosure.–When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

The 2008 Amendment to Federal Rule of Evidence 502 states that the Amendment applies to matters pending on September 19, 2008 "insofar as is just and practicable," which applies in this case. Attorney-Client Privilege and Work Product Claims; Limitations on Waiver, Pub. L. No. 110-322, 122 Stat. 3537. Plaintiff, the disclosing party, has the burden to prove that the elements of Federal Rule of Evidence 502(b) have been met. *United States v. Sensient Colors, Inc.*, No. 07–cv–1275 (JHR/JS), 2009 U.S. Dist. LEXIS 81951 at *12 (D.N.J. Sept. 9, 2009). The United States has neither taken reasonable steps to prevent disclosure nor promptly taken reasonable steps to rectify the error.

The Explanatory Note to Federal Rule of Evidence 502(b) (revised November 28, 2007), discusses a multifactor test for determining whether inadvertent disclosure is a waiver. *Sensient*, at *12 n. 8. These factors include:

> the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness. Other factors are the number of documents to be reviewed and the time constraints for production. . . . No one factor is dispositive. "The rule . . . is really a set of non-determinative guidelines that vary from case to case" and is designed to be "flexible."

*Id.* (citations omitted).

The United States has not taken reasonable precautions to prevent disclosure. Unlike the United States' efforts described in the *Sensient* case, the United States never performed any re-review of its document database after having notice, as early as April 2008, that it was producing privileged documents. *Id.* at *5. The United States' document production in the QGM case was of the same magnitude as QGM's production. It was less than half of the production involved in the *Sensient* case, involving an entire re-review. Moreover, unlike the *Sensient* case, where the Plaintiff for the most part did not produce the contested document on multiple occasions, *id.* at *15, the United States here has produced many of the contested documents on multiple occasions, including Contested Document 3/Hutchinson Exhibit 11, no less than five times (EPA_00068235-9, EPA_00068250-256, EPA_00068257-263, and EPA_00068264-70); Contested Document 5 at least one other time (EPA_00152214-16); and Contested Document 6/Hutchinson Exhibit 17 at least one other time (*see* Exhibit H, October 26, 2009 letter at 2 showing two bates numbers).

In addition, the listing of five documents on the United States' privilege logs provided before Mr. Elmer's October 26, 2009 letter supports a finding of waiver. As stated by *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. 1996):

8

Harmony Gold also contends that the assignment of Documents One and Two to its Privilege Log somehow militates in favor of this court finding that it took adequate precautions. . .. This court, however, reaches the opposite conclusion. It is axiomatic that a screening procedure that fails to detect confidential documents that are actually listed as privileged is patently inadequate. Moreover, we find Harmony Gold's contention inapposite; if anything, it demonstrates only Harmony Gold's intent to designate Documents One and Two as privileged, nothing more.

The United States also did not promptly take reasonable steps to rectify the error. The following summarizes the delay between production or notice and rectifying the error:

Contested Document 1: Production: August 25, 2009; Notice of Intended Use: September 10, 2009; Objection: October 26, 2009.

Contested Document 2: Production: August 25, 2009; Notice of Intended Use: September 10, 2009; Objection: October 26, 2009.

Contested Document 3/Hutchinson Exhibit 11: Production: February 6, 2009, August 25, 2009; Notice of Intended Use: September 22, 2009; Objection: September 24, 2009.

Contested Document 4/Hutchinson Exhibit 18: Production: August 25, 2009; Notice of Intended Use: September 22, 2009; Objection: September 24, 2009.

Contested Document 5: Production: May 22, 2009; Notice of Intended Use: September 22, 2009; Objection: October 26, 2009.

Contested Document 6/Hutchinson Exhibit 17: Production: August 25, 2009; Notice of Intended Use: September 22, 2009; Objection: September 24, 2009.

Contested Document 7: Production: October 6, 2008; Objection: November 4, 2009.

These delays in attempting to rectify the error are more than, or comparable to: the three-month

9

delay from production deemed unreasonable in *Central Die Casting and Mfg. Co. v. Tokheim Corp.,* No. 93-C-7692, 1994 U.S. Dist. LEXIS 11411 *14 (N.D. Ill. Aug. 12, 1994); the month and a half delay from production deemed unreasonable in *Figueras v. Puerto Rico Elec. Power Auth.*, 250 F.R.D. 94, 97-98 (D.P.R. 2008); and the two-week delay from learning of disclosure deemed unreasonable in *Harmony Gold*, 169 F.R.D. at 17.

If a party is on notice of an error in its document production, it should not wait for its adversary to discover the error and then claim protection under Federal Rule of Evidence 502(b). *Sensient*, 2009 U.S. Dist LEXIS 81951 at *19 n. 12.  The rule requires the producing party to follow up on obvious indications that a protected communication or information has been produced inadvertently.  *Id.* at *23.  In *Sensient*, the Court held in connection with a second group of documents that the United States had not acted reasonably when it received a letter from defendant putting it on notice that something was amiss with its document production and privilege review, and the United States did not promptly reassess its procedures and re-check its production.  *Id.* at **20-21.  Moreover, the Court emphasized that the Plaintiff should have checked the accuracy of its complete document production, not just the documents defendant identified.  *Id.* at **21-22 n. 13.

Moreover, the interests of justice and notions of fairness support waiver.  In *Sensient*, when documents were disclosed to others, the Court ruled that the interest of justice did not support retrieving the documents when the plaintiffs did not act diligently to rectify the error.  *Id.* at *19 n. 12.  QGM has relied on the contested documents in its Opposition Memorandum, the Hutchinson and Beeler Depositions, and otherwise in preparing its defense.  QGM may have relied on other documents in preparing its defense over which the United States may claim

10

inadvertent disclosure in the future. The reliance of a document in a brief was one of the reasons that the Court in *Central Die Casting and Mfg. Co. v. Tokheim Corp.,* No. 93-C-7692, 1994 U.S. Dist. LEXIS 11411 (N.D. Ill. Aug. 12, 1994), denied a producing party's motion for a protective order. As stated in the *Harmony Gold* case:

> We find that Harmony Gold's attempt to rectify the error was lax at best. Moreover, even if Harmony Gold had acted expeditiously, FASA had already incorporated Documents One, Two, and Three in its Motion for Judgment On The Pleadings, and, therefore, the disclosure was irremediably complete. The documents had lost all their confidentiality. *See Parkway Gallery Furniture, Inc.* 116 F.R.D. at 51, 52. "When disclosure is complete, a court order cannot restore confidentiality and, at best, can only attempt to restrain further erosion." *Id.* Such an order, at a minimum requires a very strong showing with respect to the other factors, a showing which Harmony Gold has not made. *Id.*
>
> Lastly, the overriding issue of fairness in this case singularly favors a finding of waiver because FASA has relied on the documents in support of its Motion For Judgment On The Pleadings, Or Alternatively For Summary Judgment. *See Bud Antle, Inc. v. Grow-Tech, Inc.*, 131 F.R.D. 179, 183 (N.D. Cal. 1990). Just as in *Bud Antle, Inc.*, "the bell has already rung, and the court cannot now unring it by denying [defendant] access to the [document]." *Id.* at 184.

*Harmony Gold,* 169 F.R.D. at 117-18. *See also Figueras v. Puerto Rico Elec. Power Auth.*, 250 F.R.D. 94 (D.P.R. 2008) (plaintiffs had inadvertently produced a document for over a month and a half, and during that time period, the defendant came to rely on that document, as evidenced by the use of that document in a deposition).

## **CONCLUSION**

For the foregoing reasons, QGM respectfully requests that the Court grant its Motion that the United States has waived its privilege over seven inadvertently produced documents as well as any other inadvertently produced documents that the United States identifies in the future, and to compel discovery responses concerning inadvertently produced documents.

11

#1437527 v2 den

DATED this 11th day of November, 2009.

                                              HOLME ROBERTS & OWEN LLP

                                              /s/ George M. Haley
                                              George M. Haley
                                              E. Blaine Rawson
                                              *Attorneys for Defendants*

#1437527 v2 den

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 11th day of November, 2009, a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION UNDER RULE 26(b)(5)(B) FOR DETERMINATION THAT THE PLAINTIFF HAS WAIVED PRIVILEGE OVER INADVERTENTLY PRODUCED DOCUMENTS AND MOTION UNDER RULE 37(a)(3)(B) TO COMPEL DISCOVERY RESPONSES REGARDING INADVERTENTLY PRODUCED DOCUMENTS,** was served CM/ECF as follows:

> Brett L. Tollman
> United States Attorney
> Daniel D. Price
> Assistant United States Attorney
> 185 South State Street, Suite 300
> Salt Lake City, Utah  84111
> *daniel.price2@usdoj.go*v
>
> Jerel L. Ellington
> James D. Freeman
> Mark C. Elmer
> Paul Gormley
> Attorneys, Environmental Enforcement Section
> U.S. Department of Justice
> 1961 Stout Street, 8th Floor
> Denver, Colorado  80294
> *jerry.l.ellington@usdoj.gov*
> *james.freeman2@usdoj.gov*
> *mark.elmer@usdoj.gov*
> *paul.gormley@usdoj.gov*
>
> *Attorneys for Plaintiff*

/s/ George M. Haley

#1437527 v2 den