IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LINDA YUZEITIS,<br><br>        Plaintiff,<br><br>vs.<br><br>DESIGNER FURNITURE GALLERY,<br><br>        Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:08CV167DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on several motions: (1) Defendant's Motion for Summary Judgment; (2) Plaintiff's Motion for Summary Judgment; and (3) Plaintiff's Motion to Amend Admission. The court held a hearing on these motions on April 13, 2010. At the hearing, Plaintiff was represented by April L. Hollingsworth, and Defendant was represented by Brian L. Olsen. The court heard argument and took the motions under advisement. After carefully considering the memoranda submitted by the parties and the facts and law relevant to the motion, the court enters the following Memorandum Decision and Order.

In this case, Plaintiff alleges causes of action arising under COBRA and ERISA as a result of Defendant's cancellation of Plaintiff's health insurance benefits. Plaintiff began working for Defendant in August 2005. The parties dispute, however, when Plaintiff terminated her employment with Defendant. It is undisputed that Plaintiff did not work between June 2006

1

and September 2006 because of a back surgery she underwent during that time period. But Defendant contends that Plaintiff terminated her employment in June 2006 and became re-employed in September 2006. Whereas, Plaintiff claims that she took medical leave under the FMLA from June 2006 to September 2006 and did not terminate her employment with Defendant until April 2007. The parties further dispute when Plaintiff's insurance benefits were cancelled.

Defendant brought a summary judgment motion based on a Request for Admission in which Plaintiff admitted that she elected COBRA benefits in June 2006, when she claims that she took a medical leave and Defendant claims that she chose to terminate her employment. Plaintiff states that the response to the request for admission was an error and Defendant should have realized as much because the admission is inconsistent with her other responses.

Based on the error and in response to Defendant's motion for summary judgment, Plaintiff filed a motion for leave to amend the response. Defendant opposes the motion to amend, claiming that it would be prejudiced if she is allowed to amend the response because fact discovery has ended and it chose not to depose her because of the response. Plaintiff, however, agrees that if she is allowed to amend the admission, Defendant should be allowed to depose her outside the discovery period.

The court concludes that Plaintiff should be allowed to amend the admission. The admission is obviously inconsistent with Plaintiff's theory of the case. Moreover, Plaintiff's counsel admits that the response was an unintended oversight. The court determines, therefore, that in these circumstances it is reasonable to allow Plaintiff to amend the response and reopen the discovery period for three months from the date of this Order. Defendant may take Plaintiff's

deposition, and both parties may schedule any other depositions that may be deemed helpful within that three-month period. Accordingly, Plaintiff's Motion to Amend Admission is granted.

Because Defendant's motion for summary judgment was based primarily on Plaintiff's erroneous admission, the court concludes that Defendant's motion should be denied. Without the admission that Plaintiff elected COBRA, there are clearly too many material facts in dispute. Not only does Plaintiff dispute electing COBRA, she disputes whether she even received the COBRA notice. Although there is writing on the notice to indicate that it was sent to Plaintiff, there is no direct evidence that it was in fact sent. Moreover, the notice is not filled out or signed by Plaintiff.

Under her medical leave theory of the case, Plaintiff contends that she had an understanding with her supervisors that she would keep her insurance coverage during her leave and her regular insurance premiums that were taken out of her paycheck would be taken out of residual commission checks that she would continue to get during the leave. Plaintiff claims that Defendant agreed that if the commissions were not enough to cover the amounts she usually paid for the premiums, she would pay the extra amount. Plaintiff states that she was notified in July that the commissions were not enough to cover the insurance costs, and her husband sent Defendant a check for $227.84 to make up the difference for her insurance premium. Defendant, however, claims that this July check was Plaintiff's first and only COBRA payment after terminating her employment and electing COBRA.

In addition, there is a factual dispute as to whether Plaintiff was eligible to take a medical leave in June 2006. Defendant relies on its medical leave policy, effective August 21, 2006, to argue that Plaintiff was not eligible for medical leave because she had not worked for Defendant

for 365 days and she did not provide a medical statement for the leave. Plaintiff rightly points out, however, that the policy Defendant relies on was not effective until after she was on leave. The policy in effect in June 2006 provided that the employee need only be employed for 90 days prior to taking the leave. Furthermore, the parties dispute whether Plaintiff gave Defendant proper documentation regarding her back surgery. There is no written documentation to support her medical leave. But Plaintiff contends that whether she provided anything in writing or not, her supervisors were sufficiently satisfied at the time she took the leave that her back surgery was necessary.

It is undisputed that Plaintiff returned to work for Defendant in September 2006 and continued to work for Defendant in some capacity until April 2007. Under their competing theories, Plaintiff claims that she returned to work after a medical leave and Defendant contends that Plaintiff was re-employed. Plaintiff, however, did not work as many hours as she had before the back surgery. In September and October, insurance premiums were deducted from Plaintiff's paycheck as they had been before her leave. Plaintiff relies on payroll records and these continuing deductions to assert that she was considered to be on leave from June to September 2006.

In November, however, Plaintiff noticed that the insurance premiums were no longer being taken out of her check. She alleges that she asked Defendant's owner about it and he said that her insurance coverage had been cancelled because she had not been working enough hours. Plaintiff claims that she considered this response erroneous because the insurance company continued to cover her medical expenses. Defendant, however, appears to argue that at that time Plaintiff's COBRA coverage had ended and Plaintiff was not currently working enough hours to

qualify for health insurance benefits.

Plaintiff, however, had not had any break in coverage from her insurance company. In addition to Plaintiff's back surgery, Plaintiff's husband was on her insurance and had several medical claims due to diabetes and a prior stroke. Plaintiff states that all of these claims were consistently paid until May 2007.

In February 2007, Plaintiff suffered an on-the-job injury but she continued working until April 2007, when the injury ultimately precluded her from continuing. On May 2, 2007, Plaintiff received a letter from the insurance company stating that her insurance coverage terminated as of February 28, 2007. The insurance company subsequently rescinded payment for items it had previously covered. Plaintiff claims that she never received any notification of her right to continue coverage under COBRA when she received notice that her insurance coverage was canceled in May 2007.

The basis for Plaintiff's motion for summary judgment is that Defendant's alleged COBRA notices were inadequate as a matter of law. Plaintiff claims that to the extent that Defendant claims that it sent a COBRA Notice in June 2006, the notice was insufficient because it gave her four, rather than sixty, days to respond and did not provide a notice about retaining her husband on the insurance. Defendant does not dispute that no notice was given to Plaintiff in 2007. Defendant claims, however, that it terminated her insurance coverage in September 2006 and gave her verbal notice directly at work.

Defendant relies on *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380 (10th Cir. 1997) to assert that it is a factual issue as to whether it made a good faith effort to notify Plaintiff of her COBRA rights. *Id.* at 1383. Given the number of factual disputes at issue in the case, such as

whether Plaintiff ever received a COBRA notice, the court concludes that the adequacy of the notice should be determined at trial when other factual issues are also resolved.

Defendant further argues that Plaintiff's statutory penalty claims are barred by the one-year statute of limitations in Utah Code Ann. § 78B-2-302(2). Plaintiff did not bring this case until February 27, 2009, nearly two years after her insurance was canceled. Plaintiff, however, relies on *Smith*, in which the Tenth Circuit found that in a case involving inadequate notice under COBRA, the period to elect COBRA expired two years after the initial notice failure, when the plaintiff became eligible for Medicare, and the plaintiff's wife's eligibility continued for an unspecified period. 128 F.3d at 1383. The court concludes that this issue should also be resolved at trial with the other outstanding factual issues regarding the adequacy of the notices.

Finally, Plaintiff argues that the court, in its assessment of what penalty to apply, should be able to consider the fact that Plaintiff's husband died in July 2008 as a result of their inability to pay for his diabetes medications. Defendant asserts that Plaintiff's husband's death is irrelevant to the case. There does not, however, appear to be a basis for determining this issue on summary judgment separate from the issue of whether a statutory penalty is warranted. Thus the issue may be better addressed at trial.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend Admission is GRANTED, the parties are granted three months from the date of this Order in which to conduct discovery. Both Plaintiff's and Defendant's Motions for Summary Judgment are DENIED based on disputed issues of material fact. The one-day bench trial in this matter, which is currently set for November 8, 2010, is vacated and reset for December 8, 2010, due to the court's extension of the

discovery period and a scheduling conflict with a criminal trial set to be tried the first two weeks of November.

DATED this 3rd day of May, 2010.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge