IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION,<br><br>                          Plaintiff-Intervenor<br><br>vs.<br><br>QUESTAR GAS MANAGEMENT COMPANY,<br><br>                          Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PRELIMINARY INJUNCTION<br><br>Case No. 2:08CV167DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Questar Gas Management Company's ("Questar") Motion for Temporary Restraining Order and Preliminary Injunction seeking to enforce provisions of a Surface Use and Access Concession Agreement ("the Agreement") entered into between Questar and The Ute Indian Tribe of the Uintah and Ouray Reservation ("the Tribe"). Questar's request for injunctive relief stems from actions of the Tribe on June 22 and 23, 2010, at three of Questar's construction sites located on land owned by the Tribe–the Stagecoach Processing Plant, the Stagecoach Processing Plant expansion known as Iron Horse, and the related transmission line project sites. On those days, the Tribe shut down the construction sites and removed Questar's workers from the sites. Questar and the Tribe dispute whether the Tribe could take such actions. Questar argues that the Tribe is bound by the dispute resolution provisions of the Agreement and is not entitled to use self-help remedies. The Tribe,

however, believes that the dispute is not covered by the Agreement and it was within its sovereign rights to take such actions.

The court held a hearing on Questar's motion on July 1, 2010. At the hearing, Questar was represented by George M. Haley and E. Blaine Rawson, and Plaintiff-Intervenor The Ute Indian Tribe of the Uintah and Ouray Reservation ("the Tribe")was represented by Jeremy Patterson and Kimberly D. Washburn. The court heard oral arguments from counsel, and took the motion under advisement. Prior to the hearing, both parties submitted legal memoranda to the court setting forth their respective positions regarding the propriety of injunctive relief in this matter. Based on the law and facts relevant to the pending motion, the court enters the following Memorandum Decision and Order Granting Questar's Motion for Preliminary Injunction.

## BACKGROUND

In January of 2005, the Tribe and Questar entered into a Surface Use and Access Concession Agreement ("the Agreement"). The Agreement comprehensively sets forth Questar's rights of access to certain lands owned by the Tribe. Article 2 of the Agreement provides that the Agreement "constitutes a complete grant of access by the Tribe to Questar, its employees, representatives and contractors for the purposes outlined herein." Questar's Mem. Supp. Mot. Temp. Rest. Order and Prelim. Inj., Ex. D "Agreement", at ¶ 2.1. As more specifically outlined in other provisions, the Tribe agreed to grant Questar the "right to access and use so much of Concession Area 1, the Existing Pipeline Corrodors, and the Existing Distribution Corridors as is reasonably necessary for the existing and *future* Transportation Pipelines, Distribution Facilities, and Oil and Gas Activities of Questar."[1] *Id*.

---

[1] The surface access allowed under Article 2 includes the following specified activities: "the construction, drilling, completing, operation, maintenance, repair, replacement, looping

Article 4 of the Agreement addresses future oil and gas activities. *Id.* ¶¶ 4.1 to 4.5. Article 4 gives Questar the right to conduct future activities such as, "the construction of new gathering lines and any new compression, blending, treatment and processing facilities and equipment." *Id.* ¶ 4.1. In connection with such future work, Questar is required to submit right-of-way applications and necessary applications and forms. *Id.* ¶¶ 4.2, 4.3. The Tribe is required to "provide prompt written notice to Questar of its reasons for denying or delaying access" and Questar can challenge the Tribe's refusal in arbitration. *Id.* ¶ 4.3. Article 4 specifically references the dispute resolution provisions contained in Article 17 of the Agreement. *Id.*

Article 10 of the Agreement addresses applications for surface access. Article 10 states that "[a]s to any proposed new surface uses, Questar will file appropriate right-of-way applications with the Tribe and the BIA and provide the notice required under Article 11. Upon expiration of the notice period, Questar may use and access the surface applied for unless notified in writing by the Tribe of an objection to the proposed use based on reasons of the health and safety of the Tribe, and those who use and inhabit tribal lands." *Id.* ¶ 10.4.

The parties factually dispute whether Questar has complied with the provisions of Article 4 and 10 with respect to the two construction projects the Tribe recently shutdown. The Tribe alleges that Questar did not provide adequate notice to the Tribe; whereas, Questar claims that it provided the required notice and the Tribe failed to notify it of its objections.

---

(adding additional pipelines in same right-of-way), expansion (increasing size of the pipeline in the same right-of-way), extension (new pipeline joined to existing pipeline limited to exclusively to Concession Area 1 and the Existing Pipeline and Distribution Corridors), modification, reconstruction, restoration, rehabilitation of well-sites, gathering systems, mainline systems, distribution systems, measurement facilities, compressor stations, processing facilities, taps, dehydration facilities, valve assemblies, storage and injection facilities and other associated appurtenances and facilities."

Article 17 of the Agreement applies to resolution of disputes arising out of or relating to the Agreement. Under Article 17, a party claiming that another party is in breach of the Agreement must provide the other party with written notice of the alleged breach. *Id.* ¶ 17.1. No breach is subject to a claim until thirty days have passed from the date of the written notice of the alleged breach. *Id.*

If any dispute or claim is not settled within the thirty-day period, either party may seek a resolution of the dispute by arbitration. *Id.* ¶ 17.2. Under these dispute resolution procedures, the Tribe "expressly grants a limited waiver of Tribal sovereign immunity for the limited purpose of adjudicating any and all claims, disputes or causes of action arising out of or relating to this Concession Agreement and consents to arbitration and suit solely for such limited purposes." *Id.* In exchange for the Tribe's waiver of sovereign immunity, Questar agreed to forego money damages and to seek only injunctive and declaratory relief. *Id.*

The parties further agree under Article 17 that "they shall have as a first recourse for the enforcement of this Article 17 to the United States District Court for the District of Utah and appellate courts therefrom." *Id.* ¶ 17.5. "The tribe makes its limited waiver of sovereign immunity for purposes of any action by Questar to enforce this Concession Agreement, and agrees to forego any right or claim or right to seek or require exhaustion of Tribal court remedies as a prerequisite to any action by Questar to enforce this Concession Agreement." *Id.* The Tribe also agreed under another provision that "[s]hould any conflict arise between Tribal laws and regulations and this Concession Agreement, Tribal laws and regulations shall not control over the specific provisions of this Concession Agreement." *Id.* Art. 14.

On June 22, 2010, the day that the Tribe shutdown Questar's construction sites and removed the workers, the Tribe sent a letter to Questar declaring a breach of the Agreement.

4

Questar's Mem. Supp. Mot. Temp. Rest. Order and Prelim. Inj., Ex. P. The letter also stated that until Questar came into compliance with the Agreement, the Tribe felt that it was in its best interest to immediately bar Questar's access to the work sites. *Id.*

## DISCUSSION

**Questar's Motion for Temporary Restraining Order and Preliminary Injunction**

Questar seeks to enjoin the Tribe from excluding its workers from Questar's construction sites pending a resolution of the parties' disputes in arbitration. Questar, therefore, seeks the court to enter a temporary restraining order or preliminary injunction allowing its workers access to the sites and compelling arbitration.

Preliminary injunctive relief is appropriate if the moving party establishes: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).

As an initial matter, the Tribe argues that in connection with its opposition to the motion for injunctive relief it filed a motion to dismiss Questar's counterclaims, which if granted would deprive the court of jurisdiction over Questar's request for injunctive relief. The court is not prepared to rule on the newly filed motion to dismiss in connection with the injunction nor does the court conclude that it is necessary to do so. Regardless of the presence of the counterclaims, Paragraph 17.5 of the Agreement provides that the parties shall have the United States District Court for the District of Utah "as a first recourse for the enforcement of this Article 17."

The Tribe asserts that the language in Paragraph 17.5 is limited to the enforcement of an arbitration award. Nothing in the language of Paragraph 17.5, however, limits its application to

5

arbitration awards. Rather, the language provides that it is for purposes of enforcing Article 17. This language, therefore, applies to all of the provisions of Article 17. Moreover, the Tribe's waiver of sovereign immunity contained in Paragraph 17.5 applies to "any action by Questar to enforce this Concession Agreement." The waiver is not limited to an action to enforce an arbitration award. Accordingly, the court concludes that the Agreement grants jurisdiction to this court for purposes of determining Questar's motion for injunctive relief.

With respect to the likelihood of success on the merits, the Tribe argues that this dispute is not governed by the provisions of the Agreement and it was within its sovereign rights to expel Questar's workers. This argument, however, is belied by the breadth of the language contained in the Agreement. Whether Questar provided adequate notice of its proposed construction activities and obtained proper approval fits squarely within the provisions of the Agreement. Questar also raises a dispute governed by the Agreement as to whether the Tribe gave a proper objection to the work as required under the provisions of the Agreement. Letters from the Tribe to Questar further support the finding that both parties realized that their disputes were governed by the Agreement.

The Tribe argues that the dispute involves health and safety concerns which it must address as a sovereign nation, rather than pursuant to a contractual agreement. The Agreement, however, contemplates the Tribe's role in safeguarding the health and safety concerns within its lands. The approval provisions specifically provide a basis for the Tribe to object to future work on those grounds. Therefore, even though the concerns relate to the Tribe's sovereign role, a resolution of those concerns do not take the matter outside of the context of the Agreement. Whether an additional environmental assessment was needed for each of the projects is also a matter governed by the Agreement. Moreover, the Tribe agreed that the terms of the Agreement

6

control over Tribal laws should any conflict arise.

The court concludes, therefore, that Questar is likely to succeed on the merits of it claim that the dispute is governed by the provisions of the Agreement and must be addressed through arbitration. The disputes as to proper notice, application, approval, and objection are all disputes arising from or relating to the Agreement and should be addressed in arbitration. The Agreement does not provide the Tribe a basis for shutting down operations and expelling workers. Under the terms of the Agreement, the Tribe must have the disputes resolved through arbitration.

The court further concludes that Questar has presented evidence that it will be irreparably harmed without the issuance of injunctive relief. In the Agreement, Questar waived a right to obtain money damages and agreed to seek only injunctive or declaratory relief. Thus, Questar has no adequate remedy at law for the Tribe's shutdown of its construction sites. The Tribe argues that Questar has recourse through arbitration. But such an argument is circular and does not recognize that the issue before the court is that the Tribe has failed to utilize the arbitration provisions for dispute resolution. Rather than use such dispute resolution provisions, the Tribe has employed its own remedies not contemplated by or provided for in the Agreement. The dispute as to which party complied with or violated the Agreement with respect to the approval process for the work is not before the court. Rather, Questar seeks only injunctive relief requiring the Tribe to comply with agreed upon means for dispute resolution. In seeking that remedy, the court concludes that Questar does not have an adequate remedy at law.

In considering the balance of harms, the Tribe argues that the court should consider the environmental harms that may be occurring as a result of the construction work. As pointed out by Questar, however, the Tribe has not presented any evidence to support this argument. The court is not insensitive to the Tribe's concerns, but without evidence, the court has no basis for

assuming that Questar is causing undue environmental damage. If the Tribe obtains evidence to support its argument regarding environmental harm, it can move for an injunction before the arbitrator to stop the work and protect such interests. Other than environmental harm, the Tribe has not asserted any harm that is greater than Questar's harm in having over one hundred workers removed from its construction sites, a remedy not provided for in the parties' Agreement. The court concludes, therefore, that the balance of equities in this matter tips in favor of Questar.

The court further concludes that Questar has demonstrated that the injunction is in the public interest. The parties bargained for a specific dispute resolution procedure and it is in the public interest that they each adhere to their bargain. Moreover, there is no credible evidence before the court that requiring the dispute to be addressed in arbitration proceedings would be adverse to the public interest.

Accordingly, the court concludes that Questar has met the elements required for the issuance of a preliminary injunction enjoining the Tribe from shutting down its construction sites and removing its workers from such sites pending the resolution of the parties' disputes in arbitration. While the Tribe contends that the court must hold an subsequent evidentiary hearing to issue a preliminary injunction, the court finds that the provisions of the Agreement support the issuance of injunctive relief and make further evidence unnecessary. The court also finds that a bond in connection with the injunction is unnecessary.

## PRELIMINARY INJUNCTION ORDER

Based on the above, the court enters the following Preliminary Injunction Order:

Plaintiff-Intervenor The Ute Indian Tribe of the Uintah and Ouray Reservation is:

(a) Restrained and enjoined, pending resolution by an arbitrator, from all activities which prevent Questar's and its construction contractors' access to the Stagecoach Processing Plant, the

Stagecoach Processing Plant expansion project known as Iron Horse, and the related transmission line project sites;

(b) Ordered, pending resolution by an arbitrator, to allow Questar and its construction contractors to resume surface access to the Stagecoach Processing Plant, the Stagecoach Processing Plant expansion project known as Iron Horse, and the related transmission line project sites, pursuant to Articles 4, 10, and 11 of the Agreement;

(c) Ordered, pursuant to Paragraph 17.1 of the Agreement, to seek to resolve the disputes and claims arising between them and Questar amicably, and if such does not occur within thirty days of the required written notice, to proceed to resolve the disputes through the arbitration provisions provided in Paragraph 17.3 of the Agreement; and

(d) Ordered to return the videotape that was taken from Questar's representative Brad Mitchell on June 23, 2010 to Questar's counsel, George Haley.

If the parties allege that there are any outstanding breaches of the Agreement that are not contained within the alleged breaches identified in the Tribe's June 22, 2010 letter to Questar, they shall serve each other with written notice of such breaches pursuant to Section 17.1 of the Agreement within ten days of the date of this Order. The parties may then attempt to amicably resolve all of their outstanding disputes pursuant to the Agreement and raise each of the alleged breaches in one arbitration proceeding if they unsuccessful.

DATED this 1st day of July, 2010.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge