IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION,<br><br>        Plaintiff-Intervenor<br><br>vs.<br><br>QUESTAR GAS MANAGEMENT COMPANY,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER VACATING PRELIMINARY INJUNCTION**<br><br>Case No. 2:08CV167DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on the Order to Show Cause Why the Ute Indian Tribe of the Uintah and Ouray Reservation ("the Tribe") Should Not Be Held in Contempt for Violating Preliminary Injunction Order and the Tribe's Emergency Motion to Vacate the Preliminary Injunction for Lack of Federal Jurisdiction. The court held a hearing on these matters on July 16, 2010. At the hearing, Questar was represented by George M. Haley, Andrew Sjoblom, and Eric Dady, and the Tribe was represented by Francis Bassett and Todd Jravelle. Due to the emergency nature of these matters, they are not fully briefed by the parties. Questar has not had an opportunity to file a reply memorandum in support of its Order to Show Cause nor an opposition to the Tribe's Motion to Vacate the Preliminary Injunction. Nonetheless, the court heard arguments from the parties on these matters and issues the following Memorandum Decision and Order.

**DISCUSSION**

**The Tribe's Motion to Vacate the Preliminary Injunction**

The Tribe moves the court to vacate its July 1, 2010 Preliminary Injunction, asserting that the court lacks subject matter jurisdiction over Questar's Counterclaim to the Tribe's Complaint in Intervention. Questar's Counterclaim seeks declaratory and injunctive relief for breach of the Surface Use and Access Concession Agreement ("the Agreement") entered into between Questar and the Tribe. Questar's Counterclaim alleges that the Tribe breached the Agreement by prohibiting access to Questar's construction sites on the Reservation and failing to seek arbitration of the access dispute. The Tribe argues that there is no subject matter jurisdiction over Questar's Counterclaim because it is permissive rather than compulsory. Neither party asserts that there is independent diversity or federal question jurisdiction over the Counterclaim.

Questar's Counterclaim states that it is brought as a compulsory counterclaim pursuant to Rule 13(a) of the Federal Rules of Civil Procedure. The Tribe, however, asserts that Questar's Counterclaim is a permissive counterclaim that "must be supported by independent jurisdiction." *NLRB v. Dutch Boy, Inc.*, 606 F.2d 929, 932 (10th Cir. 1979).

The Tenth Circuit has recognized that while a permissive counterclaim must be supported by independent jurisdiction, a compulsory counterclaim falls within the court's supplemental jurisdiction and does not need independent jurisdiction. *Id.* Similarly, in *Williams v. Western Laundry Equip., Inc.*, 2006 WL 4061164 (D.N.M. Nov. 21, 2006), the court recognized that "[a] compulsory counterclaim is within the court's supplemental jurisdiction and does not require an independent basis of subject matter jurisdiction." *Id.* at *5. The *Williams* court explained that "[b]ecause permissive counterclaims do not arise from the same transaction or occurrence as the main claim, however, they generally do not fall within the court's supplemental jurisdiction and

thus require an independent basis for federal jurisdiction." *Id.* at *6. Furthermore, "[a]lthough Rule 18 allows for liberal joinder of claims, the rule addresses only the procedural propriety of such joinder and does not confer subject matter jurisdiction to the federal courts over joined claims." *Id.* at *8; *see also* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts.").

Therefore, in order to determine whether this court has jurisdiction over Questar's Counterclaim, the court must determine whether the Counterclaim is permissive or compulsory. Rule 13(a) defines a compulsory counterclaim as "any claim that . . . : (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."[1]

Under Section (A), "courts have given the terms 'transaction' and 'occurrence' . . . flexible and realistic constructions in order to effect 'judicial economy', i.e., trial in one action of all related controversies between the parties and , of course, the avoidance of multiplicity of suits." *Pipeliners Local Union No. 798 v. Ellerd*, 503 F.2d 1193, 1198 (10th Cir. 1974). "[R]ather than attempting to define the key terms of Rule 13(a), " "most courts . . . have preferred to suggest standards by which the compulsory or permissive nature of specific counterclaims may be determined." *Id.* The court then identified these standards by posing four questions: "(1) Are the issues of fact and law raised by the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on defendants' claim absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute plaintiffs' claim as well as defendants' counterclaim? and (4) Is there any logical relation between the claim and counterclaim?" *Id.* Of

---

[1] Section (B) does not apply in this action because the Tribe was already a party to the action based on this court's order allowing it to intervene.

3

these questions, the court recognized that "[t]he 'logical relation' test is the most controlling." *Id.* at 1199. Furthermore, the court stated that "in deciding what is a 'transaction' or 'occurrence', the terms must be accorded liberal construction." *Id.*

In this case, the court allowed the Tribe intervention as of right with respect to its sovereign jurisdictional issues raised by Questar's affirmative defense that the facilities at issue in the United States' Clean Air Act claims are not within "Indian Country" because certain lands were disestablished by acts of Congress. The court also allowed the Tribe permissive intervention with respect to its public nuisance claim to the extent that the claim's allegations share common legal and factual questions with the CAA enforcement claims. Pursuant to the court's order allowing intervention, the Tribe filed its Complaint in Intervention asserting only a claim for common law nuisance. The Tribe did not assert any of its own claims relating to the sovereign jurisdictional issues raised by Questar's affirmative defenses.

The parties dispute whether the court should analyze the counterclaim in connection with only the Tribe's nuisance claim or Questar's affirmative defense as well. Because of the liberal construction the court should afford the terms "transaction" and "occurrence" and the procedural complexity of the claims and issues raised in this case, the court will analyze whether the Counterclaim is sufficiently related to either the claim or affirmative defense to be considered a compulsory counterclaim.

Questar's claim for breach of the Agreement is factually and legally unrelated to the Tribe's nuisance claim. The nuisance claim relates to alleged air pollution, whereas the Counterclaim relates to access to Questar's construction sites. Moreover, the facilities at issue in the nuisance claim are separate facilities from the construction sites at issue in the Counterclaim. Although Questar asserts that the Tribe has propounded discovery requests relating to the

4

construction sites, the standard for seeking discovery broadly allows a party to obtain information that may lead to relevant information. The discovery requests are not an adequate indicator of the legal and factual connection between the alleged breach of the access Agreement and the Tribe's nuisance claim. Similarly, the evidence the Tribe needs to establish its nuisance claim is substantially different than the evidence Questar needs to establish its breach of the Agreement. Moreover, Questar's breach of contract claim for failure to provide access to construction sites would not be barred by res judicata if there was a final decision on the Tribe's nuisance claim. There is no logical relation between a claim alleging nuisance and a claim alleging that a party breached an agreement by denying access and resorting to self-help measures instead of invoking the arbitration provisions.

With respect to Questar's affirmative defense, there is similarly little relationship between the defense and Questar's counterclaim. The issues of fact and law raised by the affirmative defense relate to whether certain lands were disestablished by an act of Congress. Whereas, the issues with respect to Questar's breach of the Agreement relate to whether the Tribe improperly denied access to certain construction sites under the Agreement and whether the Tribe was required to resolve the access dispute through arbitration. The land at issue in the defense also appears to be unrelated to the construction sites at issue in the Counterclaim. Again, Questar's claim for breach of the Agreement would not be barred by res judicata if there was a final judgment on the affirmative defense determining whether the lands in question are a part of the Reservation. The evidence needed for each are entirely different.

Questar argues that the Tribe's breach of the Agreement is in retaliation for Questar's affirmative defense. The Tribe, however, disputes that such a motive is behind its recent conduct. But, even if the Tribe had such a motive, the relationship between the affirmative

defense and the Tribe's alleged breach of the Agreement is tenuous as shown by the discussion of the other factors.

Although the court believes that judicial economy factors would favor a resolution of the dispute in the present action, the court concludes that under the applicable standards Questar's Counterclaim is a permissive rather than compulsory counterclaim. Under Tenth Circuit law, this court does not have supplemental jurisdiction over Questar's counterclaim. Again, it appears to be undisputed that supplemental jurisdiction is the only possible means of subject matter jurisdiction in this court. There is no asserted federal question jurisdiction for Questar's Counterclaim, and the Tribe is not a citizen of a state or a foreign state for purposes of diversity jurisdiction. *See Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993) (diversity jurisdiction); *Niagara Mohawk Power Corp. v. Towanda Band of Seneca Indians*, 94 F.3d 747 (2d Cir. 1986) ("suit on an agreement between private parties does not raise a federal question merely because the agreement was authorized by federal law or some federal agency has approved the agreement."). This portion of the many disputes between the parties will need to be litigated in state court and through arbitration. The court, therefore, vacates its July 1, 2010 Preliminary Injunction Order.

The Tribe makes much of the fact that this court failed to establish its own jurisdiction in issuing the preliminary injunction and asserts that the court "gave only glancing notice to the Tribe's jurisdictional challenge." The court notes, however, that the Tribe's present motion raises substantially different arguments than its previous filings in relation to the motion for preliminary injunction and motion to dismiss the counterclaims. The Tribe's opposition to the motion for preliminary injunction does not mention any lack of subject matter jurisdiction. The Tribe's motion to dismiss Questar's counterclaim argued that the Tribe only waived sovereign

6

immunity for actions to enforce an already-obtained arbitration award, that the Tribe's waiver of its sovereign immunity was not clear and unequivocal, and choice of law provisions are not treated as waivers of sovereign immunity. The Tribe included only two vague references to subject matter jurisdiction by stating that the counterclaims do not arise out of the same transaction or occurrence. In those reference, however, the Tribe did not cite to Rule 13, did not mention supplemental jurisdiction, did not state whether the counterclaim was compulsory or permissive, and did not cite any of the cases demonstrating that there was no diversity or federal question jurisdiction over the counterclaim. The court agrees that the court must have subject matter jurisdiction in the first instance and that subject matter jurisdiction may be raised at any time. But the court takes issue with the Tribe's characterization that this court somehow ignored its arguments; such arguments were clearly never raised.

## CONCLUSION

Because the court has concluded that it does not have subject matter jurisdiction over Questar's Counterclaim, the Counterclaim is dismissed and the court's July 1, 2010 Preliminary Injunction is vacated. Accordingly, the Order to Show Cause is moot.[2]

DATED this 16th day of July, 2010.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

---

[2] While the court finds the Order to Show Cause moot, the court notes that rather than refusing to abide by the injunction and unilaterally declaring it invalid, the Tribe should have filed a motion to reconsider or the present motion to vacate in the first instance rather than in response to Questar's Motion for Order to Show Cause.