# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      **Plaintiff,**<br><br>UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION,<br><br>      **Plaintiff-Intervenor**<br><br>vs.<br><br>QUESTAR GAS MANAGEMENT COMPANY,<br><br>      **Defendant**. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:08CV167DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Questar Gas Management Company's Motion to Dismiss The Ute Indian Tribe of the Uintah and Ouray Reservation's ("The Tribe") Complaint and the Tribe's Motion to Strike Memorandum in Support of Motion to Dismiss [Docket No. 175]. The court held a hearing on these motions on October 13, 2010. At the hearing, Questar was represented by George M. Haley and Andrew Sjoblom, the Tribe was represented by Francis Bassett and Kimberly Washburn, and the United States was represented by Mark Elmer. At the hearing, the Tribe withdrew its Motion to Strike. Therefore, the took only the Motion to Dismiss under advisement. Having carefully considered the materials submitted by the parties, the arguments advanced at the hearing, and the law and facts relevant to the motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Questar Gas Management Co. ("Questar") owns and operates five natural gas compressor stations in the Uinta Basin: Coyote Wash, Chapita, Island, Wonsits Valley, and River Bend (the "Stations"). On February 29, 2008, the United States brought this action alleging that at each of the Stations Questar failed to comply with requirements of the Clean Air Act's (the "CAA") National Emission Standards for Hazardous Air Pollutants ("NESHAP") and Prevention of Significant Deterioration ("PSD") programs intended to minimize emissions of harmful pollutants. In January 2010, this court allowed the Ute Indian Tribe to intervene in certain respects. The Ute Indian Tribe was not allowed to intervene under the citizen-suit provisions of the CAA, but it was allowed to intervene to protect its interests with respect to jurisdictional issues raised by Questar and to bring a nuisance claim to the extent that it shared common questions of law and fact with the existing CAA claims.

In accordance with the court's Order, the Tribe filed an Amended Complaint asserting a common law cause of action for nuisance with respect to the five facilities at issue in the United States' CAA enforcement claims. The Tribe alleges that each of Questar's facilities emit or has the potential to emit 250 tons per year of "criteria pollutants" subject to regulation under the CAA and that Questar releases potentially harmful amounts of HAPs. The Tribe incorporates by reference the United States' complaint. The Tribe also alleges one specific instance of uncontrolled emissions, which allegedly occurred in late 2005 at Questar's Coyote Wash Facility.

## DISCUSSION

Questar moves for dismissal arguing that: (1) the Tribe's Complaint does not include allegations that share common questions of law and fact with the CAA claims; (2) the Tribe's

2

federal common law nuisance claim is preempted or displaced by the CAA; (3) the Tribe's Complaint does not meet *Twombly* pleading standards; and (4) the Tribe's common law nuisance claim is barred by the statute of limitations and/or laches.  In response to Questar's motion, the Tribe filed a memorandum in opposition and a First Amended Complaint.  Questar opposes the Tribe's filing of the First Amended Complaint.

At the hearing on the motion, Questar focused almost solely on its preemption argument. The court, however, will begin its analysis with the issue of the proper scope of the nuisance claim and then proceed to the question of whether the nuisance claim is preempted.

**1. Scope of Claim**

With respect to the Tribe's nuisance claim, this court expressly ordered that the Tribe could permissively intervene in only "those matters that share common questions of law and fact with the existing CAA claims."  The court further stated that it would "not allow the Tribe to pursue its nuisance claim to the extent it covers matters unrelated to ongoing CAA enforcement action. The Tribe should more properly assert such claims in a separate action against Questar."

The Tribe's complaint in intervention includes allegations and requires proof not common to the claims pursued by the United States. The United States' claims against QGM are based on Questar's alleged failure to comply with various CAA regulatory programs.  The United States seeks penalties for non-compliance and a declaration that Questar come into compliance. The Tribe's public nuisance claim as alleged, however, broadens the nature of the United States' case.  It changes a regulatory enforcement action into a complex toxic tort suit and raises numerous new medical, scientific, and legal issues that are not contemplated by the current governmental action.

The Tribe claims Questar's activities have caused an unreasonable interference with the public "right to live in an environment that is *free from* harmful toxins and *pollutants*." Given that the CAA and its regulations expressly provide for emission thresholds of up to 250 *tons* of criteria pollutants and 10/25 *tons* of hazardous pollutants each year, the Tribe's claim raises new issues of both fact and law as to the precise amount of *actual* emissions (not *potential*, which underlies the majority of the United States' allegations), and whether or not the right to live in a "pollution"-free world exists, even assuming that there are any measurable or unregulated "pollutants" from the facilities.

The Tribe alleges that Questar has caused or will cause an "unreasonable interference with . . . annoyance and/or injury to the Ute Tribe and it members . . . [and has endangered] public health and safety." These new claims will require extensive factual development and discovery into the nature of the claimed medical/physical injuries to the Tribe and its individual members, as well as scientific and medical evidence of causation that are not at issue in the current lawsuit, *e.g.,* the environmental fate and transport of the contaminants of concern, modeling of the precise "dose" of pollutants to which human and ecological receptors may have been exposed, toxicological and medical evidence of illnesses allegedly caused by such alleged exposures, etc. These issues dramatically expand the nature and scope of this lawsuit beyond that which was contemplated by the court's order.

The Tribe claims that Questar has caused unreasonable and unnecessary danger to the public health and safety in the Reservation, including the lands, waters, and air. By including allegations of harm to **water and land**, the Tribe greatly expands the breadth of this Clean Air Act case, which only involves claims related to air emissions.

The Tribe makes several allegations regarding ozone. The United States has not alleged that any emissions from the facilities have exceeded ozone standards. Accordingly, while the United States' CAA claims and the Tribe's nuisance claims may have some facts that overlap—such as the location of the facilities, the types of equipment utilized by the facilities, the types of emission controls used at facilities, the type of emissions from the facilities—the Tribe's nuisance claim goes far beyond the CAA claims and would require extensive additional proof and defense. To allow the Tribe to pursue such a broadly alleged nuisance claim would result in extended discovery and protracted litigation, and likely require joinder of other operators of similar facilities with similar emissions in the Uinta Basin. The court did not intend to allow the Tribe's limited intervention on its nuisance claim to have such far-reaching results. The court clearly intended the Tribe to pursue any nuisance claims unrelated to the ongoing CAA enforcement action in a separate action. The court, therefore, grants Questar's motion with respect to the scope of the nuisance claim. All matters unrelated to the CAA claim should be brought in a separate action.

The Tribe's First Amended Complaint, which it seeks to file in response to Questar's motion to dismiss, requests the addition of a state law nuisance claim. The state law action clearly goes beyond the court's directives to limit the federal common law nuisance claim to matters in common with the CAA action. The Tribe's request to intervene never contemplated the addition of a state law nuisance claim. Moreover, a state law claim against the facilities under Utah's public nuisance law would only be appropriate if Questar's facilities are within Utah's regulatory jurisdiction. The Tribe has consistently argued that the stations are on the Tribe's reservation. The court would need to decide whether the stations are on the Tribe's land

or the state's land before deciding whether a state law claim was appropriate. There would also be questions regarding standing of the Tribe to assert a claim with respect to land that is not a part of its reservation. The court believes that the assertion of a state law nuisance claim is premature.

**2. Preemption/Displacement**

Questar argues that the court should dismiss the Tribe's federal common law nuisance claim because the claims asserted therein are preempted or displaced by the CAA. "Federal common law can be applied, if at all, . . . only in the absence of an applicable Act of Congress." *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367 (1943). Courts "'start with the assumption' that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law." *Milwaukee v. Illinois*, 451 U.S. 304, 316-317 (U.S. 1981). In *Milwaukee*, the United States Supreme Court held that the Federal Water Pollution Control Act ("FWPCA") preempts or displaces the federal common law of nuisance in the area of water pollution. *See id.* But in contrast to the area of water pollution where the Supreme Court has held that the FWCPA entirely displaced the federal common law of nuisance, "no Supreme Court case has held that the CAA has displaced federal common law in the area of air pollution." *Connecticut v. American Electric Power Co.*, 582 F.3d 309, 375-76 (2d Cir. 2009), *cert. granted*, 2010 WL 4922905 (Dec. 6, 2010).

Even though the Supreme Court has not addressed the comprehensive nature of the CAA, the test for preemption from *Milwaukee* involves an assessment of the scope of the federal legislation and whether the scheme established by Congress addresses the problem formerly governed by federal common law. *Milwaukee*, 451 U.S. at 315 n.8. Even if

6

application of federal common law does not directly conflict with the CAA, the federal courts are not free to "supplement" Congress' answer to the problem. *Id.* at 315 (citing *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618 (1978). The *Milwaukee* analysis, therefore, involves a review of both the statute and the particular claims at issue. *See id.*

"[T]he CAA establishes a complete regulatory procedure whereby various pollutants are identified, air quality standards are set, and procedures for strict enforcement are created." *Kin-Buc, Inc.*, 532 F. Supp 699, 701 (D.N.J. 1982); *Connecticut v. American Electric Power Co.*, 582 F.3d 309, 375-76 (2d Cir. 2009), *cert. granted*, 2010 WL 4922905 (Dec. 6, 2010). Pursuant to the CAA, the EPA has promulgated NAAQS for "criteria pollutants" and developed programs to attain and achieve these standards. Likewise, the CAA prescribes a comprehensive program to address HAPs. The CAA also includes a comprehensive enforcement program, both civil and criminal, to ensure compliance.

Under the reasoning of *Milwaukee*, another district court has held that the CAA preempts or displaces common law nuisance claims in the area of air pollution to the extent that the common law claims involve issues addressed by the CAA. *Kin-Buc, Inc.*, 532 F. Supp. at 700. The Fourth Circuit has also found that a federal common law nuisance claim was preempted by the CAA. *North Carolina ex rel. Cooper v. Tennessee Valley Authority*, 615 F.3d 291, 311-12 (4th Cir. 2010). The court explained that while the district court's well-meaning attempt to reduce air pollution cannot alter the fact that its decision threatens to scuttle the extensive system of anti-pollution mandates that promote clean air in this country. "If courts across the nation were to use the vagaries of public nuisance doctrine to overturn the carefully enacted rules governing airborne emissions, it would be increasingly difficult for anyone to determine what standards

7

govern." *Id.* at 302. The court was also concerned that public nuisance suits in the area of air emissions "would reorder the respective functions of courts and agencies." *Id.* at 306.

The Tribe argues that Questar is asserting in this motion that the CAA is a complete regulatory procedure that displaces the Tribe's nuisance claim while at the same time asserting in the case as a whole that Questar's facilities are not major sources subject to the CAA. If this court were to accept Questar's defense for any and all of the United States' enforcement action claims, the Tribe argues that the CAA would not apply to Questar's operations and a federal nuisance claim would not be displaced. While Questar argues that its stations do not fall within the major source provisions of the CAA, it does not argue that it does not fall within any of the provisions of the CAA. The claims at issue, therefore, are governed by the CAA.

The Tribe's complaint alleges facts with respect to Questar's emission of "criteria pollutants" or "hazardous air pollutants," as defined under the CAA. Questar's emission of these "criteria pollutants" and "hazardous air pollutants" and the regulatory programs that address them are the subject of the United States' enforcement action against Questar. The Tribe's allegations of public nuisance are wholly grounded in Questar's alleged CAA violations. Accordingly there can be no clearer example of where "Congress occupies the field through the establishment of a comprehensive regulatory program supervised by an expert administrative agency." *Kin-Buc, Inc.*, 532 F. Supp at 701. The CAA addresses the emissions at issue, from the sources at issue, and the United States is currently pursuing enforcement under the same allegations of CAA violations alleged in the Tribe's complaint. Accordingly, Congress has spoken directly to the question of how to enforce the CAA and what remedies are available, and the federal courts may not supplement Congress' response. *See Milwaukee*, 451 U.S. at 313 ("We have always

8

recognized that federal common law is "subject to the paramount authority of Congress.")

The Tribe, however, asserts that it is entitled to a federal common law nuisance claim because, even if the CAA applies to Questar's operations, the CAA provides no remedy for the Tribe's harm. Courts have recognized that the availability of a remedy lies at the heart of the preemption analysis, In *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 236-37 (1985), the court ruled that a federal common law claim for illegal occupation of Native American lands was not preempted by the federal Nonintercourse Act, which addresses the subject matter generally prohibiting the conveyance of tribal lands without the federal government's approval. In allowing the Oneida Nation's common law claim to proceed, the court said "the Nonintercourse Act of 1793 does not speak directly to the question of remedies for unlawful conveyances of Indian land" and thus "did not establish a comprehensive remedial plan for dealing with violations of Indian property rights." *Id.* at 237.

The court, however, is not persuaded that the Tribe is deprived of any remedy in this case. Until the Tribe receives TAS status under the CAA regulatory scheme, and develops and implements its own CAA programs, the EPA is the primary enforcer of the CAA in "Indian Country." The Tribe has the ability to be involved in the regulatory process under the CAA but has chosen not to pursue that status. Given that the CAA allows the Tribe to be part of the process but it has chosen not to be, the court does not believe that it should allow the Tribe to have an additional remedy that could be inconsistent with the CAA regulatory scheme. Moreover, the court has allowed individual members of the Tribe to bring citizen suit actions under the CAA. The court, therefore, cannot find that the CAA leaves the Tribe with no remedy. Thus, while the court allowed the Tribe to bring a nuisance action to parallel the government's

9

CAA actions, it was unaware of the law regarding preemption and displacement at that time. Having considered those cases and given the court's ruling with respect to the limited nature of the Tribe's intervention, the court grants Questar's motion to dismiss the Tribe's federal common law nuisance claim.

## CONCLUSION

Based on the above reasoning, Questar's motion to dismiss the Tribe's federal common law nuisance claim [Docket No. 175] is GRANTED.

DATED this 13th day of December, 2010.

BY THE COURT:

DALE A. KIMBALL
United States District Judge